## IN THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **SURVIVOR A** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Case No. _____** |
| **v.** | * | |
| | * | |
| **FENTON COMMUNITY HIGH** | * | |
| **SCHOOL DISTRICT 100 BOARD** | * | |
| **OF EDUCATION,** | * | |
| | * | |
| **Serve On:** | * | |
| **Sam Bentsen, Superintendent** | * | |
| **1000 West Green Street** | * | |
| **Bensenville, IL 60106** | * | |
| | * | **JURY DEMAND** |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

1.      Plaintiff Survivor A ("Plaintiff" or "Survivor") hereby sues Defendant Fenton Community High School District 100 Board of Education ("Defendant" or "BOE") for permitting, enabling, and empowering Michael Berago ("Berago") a teacher, coach, and administrator in Fenton Community High School District 100 ("FCHSD"), at Fenton Community High School (FCHS), to groom and repeatedly rape, sexually assault, and sexually harass Plaintiff while she was a child and student at FCHS.

2.      For well over a decade—from at least 2009 through 2023—Defendant negligently, grossly negligently, and willfully and wantonly permitted Berago to sexually harass, groom, sexually assault, and rape numerous children, including Plaintiff.

3.      Despite having concrete knowledge and complaints from teachers, parents, and students as early as 2011 of inappropriate conduct by Berago, BOE turned a blind eye to Berago's

predations and abjectly failed in its duty to protect students, including Plaintiff, from the immense harm that resulted.

4.      Defendant refused to meaningfully discipline Berago or hold him to account. Instead, it repeatedly promoted him to progressively more senior leadership positions. At the time Berago was finally placed on administrative leave in 2024, he was a member of the FCHSD Administration, serving as "Director of Equity" and "Division Leader for Math and Science."

5.      For at least 15 years, Defendant was deliberately indifferent to Berago's gross misconduct and engaged in a pattern of failing to investigate and failing to discipline Berago.

6.      For at least 15 years, Defendant engaged in a pattern of preventing and discouraging students who suffered from Berago's misconduct from coming forward, including by failing to inform parents of misconduct, and interviewing children about Berago's misconduct outside the presence of and without the knowledge of their parents.

7.      Defendant's willful and wanton conduct permitted FCHSD to become a hunting ground for Berago to commit sex crimes at will against Plaintiff and other children. Defendant's grievous institutional misconduct has caused widespread and tremendous devastation among Plaintiff and other survivors of Berago's sexual harassment, assault, and abuse.

8.      For years, Berago secured Plaintiff's silence through fear or through threats of retaliation against her or her family. Plaintiff can keep silent no longer.

## PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff Survivor A is an adult citizen of the State of Illinois.

10.      Plaintiff is filing this lawsuit under a pseudonym due to the highly personal and sensitive nature of the allegations stated herein. Plaintiff will provide her identity to Defendant on a

2

confidential basis. Defendant will not be prejudiced by conducting this litigation with Plaintiff using a pseudonym.

11.     Plaintiff attended and graduated from FCHS.

12.     Survivor A was a full-time student at FCHS in 2015 and 2016, when Berago repeatedly sexually harassed, sexually assaulted, and raped her.

13.     At all relevant times, Defendant BOE has been a body corporate that possesses all the usual powers of a corporation for public purposes, and in that name may sue and be sued, purchase, hold and sell personal property and real estate, and enter into such obligations as are authorized by law.

14.     At all relevant times, FCHS and FCHSD have been overseen, governed, and managed by the BOE.

15.     At all relevant times, the BOE has operated under various names, including Fenton Community School District 100 and Fenton Community High School.

16.     At all relevant times, the BOE's powers and duties have included the authority to adopt, enforce, and monitor all policies for the management and governance of FCHSD and FCHS.

17.     At all relevant times, FCHSD and FCHS have been alter egos, actual agents, apparent agents, partners, joint venturers, joint enterprisers, or co-conspirators of Defendant.

18.     Defendant is a citizen of DuPage County, Illinois, with its principal office at 1000 West Green Street, Bensenville, IL 60106.

19.     At all relevant times, Defendant—directly and by and through its employees, servants, and actual or ostensible agents—had the duty and responsibility to promulgate policies and procedures to protect students like Plaintiff from rape, sexual assault, sexual harassment, and

3

misconduct by school administrators, staff, and teachers, including but not limited to Defendant's agents and employees, the superintendent of FCHSD, the principal, teachers, and other administrative staff at FCHS, and Berago.

20. At all relevant times, Defendant possessed and exercised the right to manage and control the operations of FCHS, including but not limited to supervision of all educational activities, all track and field and other athletic activities, and the right to hire, supervise, and fire any employee of FCHS, such as, without limitation, the superintendent of FCHSD, the principal, teachers, and other administrative staff of FCHS, and Berago.

21. At all relevant times, Defendant had ultimate policymaking authority for FCHS and FCHSD.

22. At all relevant times, the FCHSD superintendent, FCHSD staff, FCHS principal, and FCHS teachers and staff served at the pleasure of Defendant and were subject to the Defendant's supervisory authority.

23. At all relevant times, the knowledge of Defendant's teachers, superintendents, principals, administrators, and other employees—including but not limited to the teachers and principal of FCHS and Berago—that is relevant to the facts, acts, and omissions pled herein, was imputable to Defendant as a matter of law.

24. At all relevant times, Defendant's teachers, superintendents, principals, administrators, and employees acted under color of law.

25. At all relevant times, Berago was an employee, agent, and servant of Defendant, acting within the course and scope of his employment.

4

26.     At all relevant times, Berago acted under color of law. Berago possessed and misused authority that he was given by Defendant when it hired and employed him as a teacher and coach.

27.     At all relevant times, Defendant acted under color of law. Defendant possessed misused authority that it was given pursuant to the laws of Illinois.

28.     Defendant is directly liable for its own tortious acts and omissions and vicariously liable for Berago's tortious acts and omissions, including those alleged herein.

29.     This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

30.     Venue is proper in this Court, as Defendant resides in DuPage County, which lies within this judicial district, and the action arises out of tortious acts and omissions that occurred in DuPage County.

31.     The damages claimed for each and every count below exceeds $75,000.

**FACTS COMMON TO ALL COUNTS**

I.      **Berago & FCHSD**

32.     Berago was born in November 1983 and is 40 years of age.

33.     Berago owns homes in Elk Grove Village and Streamwood, Illinois.

34.     Berago is a licensed teacher.

35.     Until 2024, when he was fired by the BOE for the conduct described herein, Berago was an employee, servant, or actual or apparent agent of Defendant.

36.     Berago's position prior to his termination was Director of Educational Equity and Innovation & District Leader of Math and Science at FCHSD.

37.     At the time he was fired, Defendant paid Berago an annual salary of $125,080.08 with "retirement enhancements" of $13,168.30 annually and other benefits of $23,411.10 annually.

38.     Berago is also the owner and manager of a private corporation, Approve It, LLC, formed in 2020, which operates under the name of Teach With AI.

39.     In 1999, Berago pleaded guilty to a charge of disorderly conduct and violation of curfew. (Case No. 99300100201, Circuit Court for Cook County.)

40.     In February 2002, Berago was found guilty on four counts of retail theft. (Case No. 02300087201, Circuit Court for Cook County.)

41.     In September 2003, Berago pleaded guilty to three additional counts of retail theft arising from a subsequent incident. (Case No. 03300505301, Circuit Court of Cook County).

42.     Berago obtained his teaching license on December 7, 2006. His license expires on June 30, 2026.

43.     Berago was a teacher and/or coach at FCHS, and an employee, servant, or actual or apparent agent of Defendant, from 2007 through 2024.

44.     Defendant hired Berago in 2007, at the age of 23, notwithstanding his recent criminal convictions for seven counts of theft.

45.     At the time of Berago's hiring, Defendant knew or should have known that Berago was unsuitable to teach children. His multiple recent criminal convictions should have indicated to Defendant that he was not mature, trustworthy, or able to exercise appropriate self-control.

46.     At the time it hired Berago, and on an ongoing basis thereafter, Defendant lacked any policy for performing criminal background checks, and did not conduct a criminal background check of Berago.

6

47.     At the time it hired Berago, and on an ongoing basis thereafter, Defendant did not promulgate or enforce adequate and appropriate policies and procedures for the prevention, monitoring, and detection of child sexual abuse and inappropriate teacher-student contact, including the crimes and tortious misconduct described herein.

48.     Berago started work at FCHS as a teacher in 2007.

49.     At all relevant times, Berago was in a position of trust, authority, and supervision with respect to all of the children he coached and taught, including Survivor A.

50.     Berago engaged in serious, serial misconduct with students who were minors attending FCHS, on an ongoing basis from 2007 through 2023, including but not limited to private communication directly with students outside of school hours about non-school matters using a school-issued cell phone or computer; grooming, inappropriate communication with students in isolated locations and inappropriate touching, which was observable and observed by agents of Defendant and other members of the school community; sexual assault; and rape.

51.     From 2007 until at least 2016, Berago inappropriately communicated with many students using a FCHSD-issued cell phone that was paid for by FCHSD. After 2016, these communications continued on Berago's own phone, after the superintendent at the time took away his phone.

52.     In the fall of 2009, Berago openly and repeatedly touched in a sexual manner the bare legs of a student who would sit on his desk during his Introduction to Sociology class. Berago also requested photographs of this student in her underwear and bra, or of her wearing plaid, during the fall of 2009.

53.     By 2009, Berago was a track coach.

7

54.     Berago inappropriately touched and communicated with, sexually harassed, sexually assaulted, and raped another student on an ongoing basis from 2009 through 2011, when she was a child attending school at FCHS and a member of the track team.

55.     In October 2011, a mother of a different student contacted Defendant after seeing texts from Berago on her minor student's phone. Defendant did nothing in response.

56.     In December 2011, teacher Emily Paydon reported Berago the then-principal of FCHS, Todd Leden, after a conversation with two students indicated that Berago was sending inappropriate messages to multiple students of a sexual and harassing nature. These inappropriate messages included statements that, inter alia, Berago could not wait until a certain student graduated so they could talk without getting in trouble. These messages were often sent during school hours.

57.     Paydon wrote a statement summarizing these reports at the request of Leden.

58.     On December 16, 2011, Leden interviewed Velez, who confirmed much of what Paydon shared and also indicated that two other students had received similar text messages from Berago.

59.     On December 16, 2011, Leden and assistant principal Carrie Pomahac interviewed one student who had received text messages from Berago, alone, without first alerting her parent or giving her parent the opportunity to be present. The child confirmed Berago had sent her several personal text messages.

60.     On January 5, 2012, Leden spoke with another student who received personal text messages from Berago. The student thought the text messages were wrong and recalled that one was "alarming."

61.     On January 6, 2012, Leden interviewed Berago. Berago admitted texting students about advice with boyfriends/girlfriends, weight room activities, and practice. His excuse for texting with regard to non-school-related activities was that he did not initiate the conversations.

62.     On January 9, 2012, Berago agreed not to send text messages to individual students, male or female, and to not send any messages to students not related to school activities.

63.     Neither Defendant nor anyone else alerted FCHSD parents of Berago's inappropriate behavior or that it was interviewing students concerning his behavior.

64.     Berago did not abide by this commitment. Berago continued to send unsolicited messages of a personal nature to students to groom them for sexual assault, using his school-issued cell phone.

65.     On May 22, 2012, teacher Stephanie Stern reported to Leden she had heard one of her students tell another he would confront Berago if "he makes me mad," and that another student said his sister's best friend had received sexual text messages from Berago.

66.     Leden spoke to a male student in response to this report from Ms. Stern. The male student advised Leden that one to two years before, Berago emailed a female student to take a ride on his motorcycle and have dinner with her. The male student said he was aware of other email exchanges between Berago and the female student.

67.     Leden also spoke with another student, who advised that inappropriate exchanges with the female student who was invited to ride on his motorcycle and go out to dinner had happened via text messages last school year, that Berago's wife had texted that female student to stay away, and that the female student responded that Berago was the one going after her.

68.     On May 25, 2012, Leden sent Berago a letter requesting a meeting to address inappropriate email correspondence.

69.     On June 11, 2012, Berago met with Leden and another administrator, Pedro Castro. Berago admitted to texting a student privately, in violation of his prior commitment, to offer relationship advice and to discuss high school rumors.

70.     Berago said he felt that female students seemed to seek approval and attention from him, "and he can't help it if he gives one female student more attention if the student is an all-state athlete."

71.     Berago agreed that he needed to "'draw the line' and be more actively aware of female students possibly misinterpreting his comments or gestures."

72.     Per notes from the meeting, Leden "suggested" that Berago not send texts or emails to students and stated that "it was best" if he stick to email (versus text messaging) and cc a school administrator on the correspondence "to avoid any possible misinterpretations by the student, especially in light of multiple similar allegations." (emphasis added)

73.     On June 13, 2012, Leden and Berago agreed that Berago should refrain from communicating with students regarding personal matters in writing, and cc the Department Chair, Athletic Director, or Principal if sending a message to an individual student. Berago was required to complete a training on awareness of social media and teachers and learning appropriate boundaries. He was to submit an action plan to Leden at the conclusion.

74.     FCHSD and BOE did not alert any parents of Berago's inappropriate behavior or tell parents it was interviewing their students in connection with allegations against Berago.

75.     Berago did not abide by this commitment. Berago continued to send unsolicited messages of a personal nature to students to groom them for sexual assault, using his school-issued cell phone and sexually assault and sexually harass FCHS students throughout his tenure at FCHSD, until he was placed on administrative leave in 2023 and fired later in 2024.

76.     Berago groomed, sexually harassed, sexually assaulted, and raped Survivor A from 2015 through and including at least 2016, when she was a minor and a student at FCHS, as further described below.

77.     Berago groomed, sexually harassed, sexually assaulted, or raped other survivors who were minor students at FCHS, before and after he victimized Survivor A.

78.     Despite their knowledge of Berago's misconduct and propensity to engage in inappropriate and dangerous interactions with students, Defendant took no further action to discipline, train, or restrict the teaching or coaching activities of Berago at any time, until FCHSD quietly placed him on administrative leave in 2023 and the BOE fired him in 2024.

II.     **Survivor A**

79.     Survivor A was a student at FCHS from 2015-2019.

80.     Survivor A joined the FCHS track and field team in the spring of 2015.

81.     Berago coached the track and field team at the time and was Survivor A's coach during 2015. Survivor A was a minor at the time and continued to be a minor throughout the abuse.

82.     Berago began grooming Survivor A in the spring of 2015 by giving special attention to her, complimenting her on her appearance and her athletic ability.

83.     Berago began texting Survivor A in the spring of 2015 with increasing frequency—eventually many times per day. The texts eventually became sexual in nature beginning in 2015 and continuing through 2016.

84.     Throughout the period of his grooming and sexual assault of Survivor A, Berago used the cell phone and computer issued to him by Defendant to text or communicate through other electronic means with Survivor A.

85.     Berago sexually assaulted Survivor A on school grounds, including in his office.

86.     Defendant's employees, including but not limited to fellow teachers and the administrative staff of FCHS, knew that Survivor A was in Berago's office with the door closed and the blinds down, on repeated occasions, while Berago was grooming and committing criminal sexual assault against Survivor A.

87.     As with Survivor A, Berago repeatedly raped Survivor A in his car and her car while they were parked in isolated locations. These rapes often occurred after Berago instructed Survivor A to meet him in the early morning hours for additional track practice. They would also occur during or immediately after the school day, when Berago would summon Survivor A via text message and pick her up in his car near FCHS to bring her to an isolated location and rape her. Berago also raped Survivor A in a hotel room.

88.     Berago videotaped one of his rapes of Survivor A.

89.     In 2016, Berago was inexplicably reassigned from track and field coaching and classroom teaching responsibilities. He began working as a school librarian. His school-issued cell phone was taken away around this time as well.

90.     On information and belief, this reassignment reflected knowledge on the part of the school district of Berago's inappropriate and unlawful communication and conduct with students.

91.     On December 1, 2016, Fenton High School received an anonymous message submitted through its website stating Berago was having inappropriate relationships with students. This message was factually true. Defendant did nothing in response.

92.     On December 13, 2016, Fenton High School's administration received an additional anonymous message. This message alluded to sexual contact between Berago and Survivor A. This message was also factually true.

93.     In December 2016, Survivor A was summoned to an unscheduled meeting with then-superintendent James Ongtengco and a school resource officer.

94.     Ongtengco stated he had received a tip that Survivor A and Berago were in an inappropriate relationship. The superintendent and the school resource officer interrogated Survivor A as to this rumor. Fearful, intimidated, and alone, Survivor A denied any inappropriate relationship was occurring.

95.     Survivor A's parents were never alerted to this meeting or to the tip that Ongtengco received of inappropriate conduct with Berago.

96.     Defendant was required under Illinois mandatory reporting law to report Berago to DCFS and law enforcement based on his conduct with Survivor A but failed to do so on an ongoing and continuing basis throughout the time of Survivor A's attendance at FCHS, and thereafter.

97.     Defendant knew or should have known of Berago's tortious acts and omissions with respect to Survivor A before and during its occurrence, because rumors and signs of his misconduct (e.g., Survivor A being in Berago's office with the door closed and the blinds down) were open and

13

obvious, and because Berago was sending a high volume of text messages and other electronic communication to Survivor A on a school-issued cell phone from the spring of 2015 to the spring of 2016 (and on a private phone thereafter), contrary to his commitment to school officials. Defendant, however, did nothing to stop his misconduct.

98.     At all relevant times, Defendant's tortious acts and omissions described herein were deliberately indifferent to her rights and safety and were willful and wanton.

99.     As a direct and proximate result of Defendant's tortious acts and omissions described herein, Survivor A has suffered the following damages, among others:

      a.     Vaginal and oral rape;

      b.     Severe mental anguish and despair;

      c.     Severe stress;

      d.     Emotional distress and anger;

      e.     Severe anxiety, nervousness, fearfulness, and panic attacks;

      f.     Depression;

      g.     Severe anger;

      h.     Severe irritability;

      i.     Personality changes;

      j.     A loss of enjoyment of life;

      k.     Difficulty in trusting and interacting with others, including those in positions of authority and/or those in intimate relationships;

      l.     Difficulty in participating in and enjoying intimate relationships;

      m.     A loss of earnings and earning capacity due to trauma;

n.   Inability to pursue track and field scholarships or track and field at the collegiate level;

o.   Negative impacts on academic grades;

p.   Reputational harm;

q.   Past and future damages for medical, health care, and psychological treatment; and

r.   Other damages as may become apparent during the course of discovery.

100.   Survivor A sent Berago text messages in 2022–2023 in an effort to document his culpability. In a message exchange dated May 16, 2022, Survivor A told Berago she felt "you never took responsibility for your actions. And I think you should for many many reasons." Berago responded, "Of course I have! I have learned and felt terrible. What else do you want?" He also stated, "Why are you coming at me like this? What the hell do you want? I've taken responsibility."

101.   Berago also sought to threaten and intimidate Survivor A into silence. For example, he implied he would seek to undermine Survivor A's mother's lawful immigration status. He also texted Survivor A on May 17, 2022 the following: "I don't know what you have up your sleeve but if it is what I think it is, be careful and be sure you have a lot of money for a lawyer because I'm not gonna let anyone come at me...ever....Trust me...if this is what it's gonna be, I'm done playing nice."

102.   Survivor A came forward in October 2023 by confiding in a trusted teacher at FCHS, who made a mandatory report. Survivor A then reported what had happened to her to law enforcement.

103. When the trusted teacher told Ongtengco in October 2023 what Survivor A had told him and that he was making a mandatory report, Ongtengco recognized the situation and identified Survivor A by name before being told her identity by the trusted teacher, which indicated his prior knowledge of serious allegations of misconduct against Berago.

## III. <u>Misconduct following Survivor A's rape and harassment</u>

104. Berago continued to engage in grooming, harassment, and sexual assault of FCHS students in a continuous and ongoing basis following the cessation of his assaults of Survivor A after 2016.

105. Defendant knew and should have known of these incidents of grooming, harassment, and sexual assault by Berago.

106. Despite this knowledge, Defendant continued to promote Berago and place him in positions where he had direct and unsupervised contact with minors.

107. For example, at the time Berago was finally placed on administrative leave in 2023, he was a member of the FCHS Administration, serving as "Director of Equity" and "Division Leader for Math and Science."

108. Berago also served as director of peer tutoring from at least 2021 through 2023.

109. On March 8, 2023, Fenton High school received a message stating the following: "Mr. Mike Berago has been sexually involved with several female students. We are aware of [NAME OMITTED] Class of 2012, and [NAME OMITTED], class of 2019. There could be others. Many staff members are aware that he has engaged in this behavior. It is concerning that he is allowed to work in a school, let alone be in a leadership role. This needs to be investigated." On information and belief, this message was factually true.

110.     On August 19, 2023, Fenton High School received an anonymous message stating, "One of your administrators, Mike Berago, has had sexual relations with 2 former students (that we are aware of). One was [NAME OMITTED] class of '13, and [NAME OMITTED] class of '19. To our knowledge, both girls were current students at the time of the offense. There may very well be other students involved. We don't understand why he is allowed to be employed at a school. Even if the victims won't press charges, isn't it the school's duty then to step in, and protect future female students from a predator. If the school won't act, then maybe a report to the ABC 7 I-Team will help resolve this matter." On information and belief, this message was factually true.

111.     On December 4, 2023, FCHS received the following message: "Mr. Berago had inappropriate relationships with students dating back at least 10 years. 2 recent victims are [NAME OMITTED] and [NAME OMITTED]. [NAME OMITTED's] friends caught her locked in the athletic office with Berago after hours, with the door locked and the blinds down. This would take place after track and field practice. I know less about [NAME OMITTED]. Also, [a] Filipino student who has since graduated used to hang out with Berago while she was still a student and their activities were unknown to his then wife as he was worried about ruining his recently rekindled marriage. There are teachers who were witnesses to this relationship. Mr. Berago in 2009 also used to rub the legs of [NAME OMITTED] when she would sit on his desk during his Intro to Soc. Classes for freshm[e]n. This happened many times over the course of that semester. She would sit on the desk to chat during individual work time and he would discreetly touch her legs during a class period in a sexual manner. Grooming since [']09." On information and belief, this message was factually true.

112.     Defendant placed Berago on administrative leave in October 2023.

17

113.    After allegations against Berago were revealed to the public in March 2024 as a result of a leaked police investigation document, Defendant terminated his employment by vote at an official meeting.

114.    Defendant claims it notified the Illinois Department of Child and Family Services (DCFS) in December 2016 about allegations against Berago. This claim is false: DCFS confirmed it received no reports regarding Berago until March 9, 2023. It is unknown if Defendant made a report in 2023, or whether the report(s) came from other sources.

115.    On information and belief, a criminal investigation into Berago is ongoing.

## CAUSES OF ACTION

## COUNT I – TITLE IX, 20 U.S.C. § 1681

116.    Plaintiff restates, realleges, and incorporates by reference paragraphs 1 through 115 as if fully restated herein.

117.    Title IX of the Education Amendments of 1972 provides that "[n]o person. . .shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

118.    Title IX was enacted for two purposes: to avoid the use of federal resources to support discriminatory practices, and to provide individual citizens effective protection against those practices.

119.    To vindicate these purposes, Title IX contains an implied cause of action in favor of victims of discrimination, enforceable in a suit for money damages.

120.    At all relevant times, BOE received federal financial assistance.

18

121.     At all relevant times, Plaintiff belonged to a protected group, on account of her female sex.

122.     At all relevant times, Plaintiff was subjected to "harassment" within the meaning of Title IX, because she was groomed, sexually harassed, and sexually assaulted by Berago.

123.     Berago harassed Plaintiff within the meaning of Title IX based on sex, because he targeted her, groomed her, and sexually assaulted her because of her female sex. Berago did not harass male students within the meaning of Title IX.

124.     Berago's harassment was so pervasive and severe that it altered the conditions of Plaintiff's education and deprived her of valuable educational benefits to which she was entitled. Berago was Plaintiff's coach and held a position of power and authority over her. Plaintiff suffered serious mental and emotional harm as a result of Berago's harassment, as described in paragraph 99 above, which substantially interfered with her ability to access the curriculum.

125.     Defendant, directly and by and through its agents, servants, and employees, knew of and was deliberately indifferent to Berago's harassment of Plaintiff.

126.     Prior to Plaintiffs' abuse, Defendant had actual knowledge that Berago's misconduct created risks to FCHSD students, including Plaintiff, which were so great that they were almost certain to materialize if Defendant failed to act.

127.     There was widespread knowledge throughout the students, faculty, administration, and leadership of FCHSD/BOE of inappropriate and tortious conduct by Berago toward Plaintiff and other female students, before and during the periods in which Plaintiff was abused.

128.     Berago acted inappropriately and tortiously with Plaintiff in an open and notorious manner, as indicated by, among other things, persistent closed-door, one-on-one meetings with

19

Survivor A, with the blinds down, in which Berago groomed, harassed, and abused Survivor A. Berago habitually kept his office door and blinds open except when he was grooming or assaulting Survivor A or other female students.

129. School officials received numerous complaints about Berago's conduct toward female students, as described above. Defendant knew that Berago was serially harassing students within the meaning of Title IX before, during, and after his harassment of Plaintiff.

130. Defendant, directly and through its agents, servants, and employees, including the relevant superintendent of schools and the principal and assistant principals of FCHS, knew about Berago's harassment of female students prior to his harassment of Plaintiff—and, on information and belief, knew about the harassment of Plaintiff at the time it was happening—and all possessed the authority to take corrective steps, but refused to do so.

131. In fact, Defendant took no action whatsoever to stop Berago from harassing, grooming, or assaulting Plaintiff.

132. Defendant's only known actions with respect to reports of Berago's improper conduct—two meetings from 2011–2012 and a training and personal "action plan"—were clearly unreasonable in light of the known circumstances and did nothing to dissuade Berago from further improper conduct or protect students.

133. Defendant's discrimination against and deliberate indifference toward Plaintiff was willful, deliberate, or intentional.

134. The deliberate indifference of Defendant—directly and by and through its employees, including the superintendents and principals who supervised Berago, acting at all times

under color of law—directly and proximately caused Plaintiff to be denied participation in and equal access to education as required by Title IX.

135. As a direct and proximate cause of Berago's abuse, Plaintiff has suffered economic damages and is reasonably anticipated to suffer economic damages in the future, as well as other past and future money damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant, and enter and order all available and appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring Defendant to institute and enforce sound and effective policies and procedures to prevent BOE teachers, administrators, and staff from grooming and assaulting students; litigation costs; reasonable attorney's fees; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT II – FAILURE TO INTERVENE (42 U.S.C. § 1983)

136. Plaintiff restates, realleges, and incorporates by reference paragraphs 1 through 115 as if fully restated herein.

137. At all relevant times, Plaintiff had a right to be free from unequal treatment under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and had rights to constitutionally protected liberty interests in bodily integrity and physical safety under the substantive due process protections of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In addition, Plaintiff had a constitutionally protected property interest in her K-12 public education, because state law entitled her to receive one.

21

138.     Berago repeatedly violated Plaintiff's constitutional rights to equal treatment and bodily integrity by grooming, harassing, and sexually assaulting her while acting under color of law.

139.     At all relevant times, Defendant, directly and by and through its agents, servants, and employees, failed to conduct a criminal background check on Berago, failed to take any steps to protect Plaintiff from Berago, failed to effectively discipline Berago and train him on maintaining appropriate boundaries with students, and failed to intervene to stop Berago from engaging in acts of grooming and sexual abuse of Plaintiff and other students.

140.     Defendant knew and strongly suspected facts showing there was a strong likelihood Plaintiff would be harmed as a result of Berago's tortious conduct, but refused to confirm whether those facts were true.

141.     Defendant knew and strongly suspected facts that showed a strong likelihood that Plaintiff would be harmed by Berago, but refused to confirm whether those facts were true.

142.     Defendant consciously failed to take reasonable measures to prevent Berago's tortious conduct toward Plaintiff.

143.     If Defendant had acted reasonably, Plaintiff would not have suffered harm from Berago.

144.     As a proximate cause of Defendant's failure to intervene, Plaintiff have suffered harm and compensable injuries, including but not limited to those described in paragraph 99 above, which entitles her to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant, and enter and order all available and appropriate relief, including damages in an amount to be determined at trial; injunctive relief

requiring Defendant to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; litigation costs; reasonable attorney's fees; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT III – DUE PROCESS (EQUAL PROTECTION AND STATE-CREATED DANGER, 42 U.S.C. § 1983)

145.    Plaintiff restates, realleges, and incorporates by reference paragraphs 1 through 115 as if fully restated herein.

146.    At all relevant times, Plaintiff had a right to be free from unequal treatment under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and had constitutionally protected liberty interests in bodily integrity and physical safety under the substantive due process protections of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In addition, Plaintiff had a constitutionally protected property interest in her K-12 public education, because state law entitled her to receive one.

147.    Berago repeatedly violated Plaintiff's constitutional rights to equal treatment, bodily integrity, and physical safety, and deprived her of a valuable property interest in her K-12 education, by grooming, harassing, and sexually assaulting her while acting under color of law.

148.    Defendant's actions as described above created a strong likelihood of serious harm to Plaintiff.

149.    Defendant's actions as described above greatly increased Plaintiff's risk of serious harm.

150.    Defendant was aware of the risk and consciously failed to take reasonable measures to prevent harm to Plaintiff. The risk to Plaintiff was obvious.

23

151.     Defendant also strongly suspected facts showing that a risk existed but refused to confirm whether those facts were true.

152.     It was foreseeable by Defendant that its acts would lead to Berago injuring Plaintiff and other female students at FCHS.

153.     Defendant's above-described acts and omissions shock the conscience.

154.     As a proximate cause of Defendant's above-described conduct, Plaintiff has suffered harm and compensable injuries, including but not limited to those described in paragraph 99 above, which entitles her to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant, and enter and order all available and appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring Defendant to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; litigation costs; reasonable attorney's fees; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT IV – MUNICIPAL LIABILITY (*Monell* Claim - 42 U.S.C. § 1983)

155.     Plaintiff restates, realleges, and incorporates by reference paragraphs 1 through 115 as if fully restated herein.

156.     At all relevant times, Plaintiff had a right to be free from unequal treatment under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and had constitutionally protected liberty interests in bodily integrity and physical safety under the

substantive due process protections of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

157.    In addition, Plaintiff had a constitutionally protected property interest in her K-12 public education, because state law entitled her to receive one.

158.    Berago repeatedly violated Plaintiff's constitutional rights to equal treatment, bodily integrity, and physical safety, and deprived her of valuable property interests in her K-12 education, by grooming, harassing, and sexually assaulting her while acting under color of law.

159.    At all relevant times, Defendant had de facto policies, widespread practices, and customs that included, without limitation, the following:

a.    Disregarding warning signs of ongoing sexual abuse or employees who were engaged in grooming students;

b.    Failing to investigate reports of sexual misconduct;

c.    Nonexistent or ineffective background checks of employees;

d.    Failing to notify DCFS or law enforcement as required when a report of sexual abuse was made;

e.    Failing to train and supervise employees to ensure they or their subordinates did not groom, harass, or assault students;

f.    Failing to discipline employees even when reports of sexual abuse of students were credible;

g.    Failing to advise parents that their children were victims of sexual abuse;

h.    Failing to advise parents before meeting with their children to discuss claims of sexual abuse;

      i.      Concealing needful information about sexual abuse of students by teachers from child protection agencies, law enforcement agencies, parents, students, and the public;

      j.      Silencing and intimidating survivors of sexual abuse by interviewing them about allegations of grooming and sexual abuse outside of the presence of their parents, thus preventing them from feeling sufficiently secure to confirm the allegations (and preventing the parents from becoming aware, contributing pertinent information, and taking steps to protect their children); and

      k.      Failing to warn parents that its employees had been acting inappropriately with their child.

160. Each of the foregoing de facto policies, widespread practices, and customs of the Board amounted to deliberate indifference to the rights of the female high school students of FCHSD, including Plaintiff.

161. As a direct and proximate result of these de facto policies, practices, and customs, Berago believed he could act with impunity and without consequences or accountability for sexually abusing students at FCHSD, including Plaintiff.

162. As a direct and proximate result of Berago's belief that he could act with impunity and without suffering any consequences for his actions, he groomed and sexually abused Plaintiff.

163. Berago's grooming and sexual abuse violated Plaintiff's constitutionally protected interests in bodily integrity, personal safety, equal treatment, and property.

26

164.     As a proximate cause of Defendant's above-described de facto policies, widespread practices, and customs, Plaintiff has suffered harm and compensable injuries, including but not limited to those described in paragraph 99 above, which entitles her to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in their favor, and against Defendant, and enter and order all available and appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring Defendant to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; litigation costs; reasonable attorney's fees; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT V – FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE (42 U.S.C. § 1983)

165.     Plaintiff restates, realleges, and incorporates by reference paragraphs 1 through 115 as if fully restated herein.

166.     At all relevant times, Plaintiff had a right to be free from unequal treatment under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and had constitutionally protected liberty interests in bodily integrity and physical safety under the substantive due process protections of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

167.     In addition, Plaintiff had a constitutionally protected property interest in her K-12 public education, because state law entitled her to receive one.

27

168.     Berago repeatedly violated Plaintiff's constitutional rights to equal treatment, bodily integrity, and physical safety, and deprived her of her valuable property interests in her K-12 education, by grooming, harassing, and sexually assaulting her while acting under color of law.

169.     At all relevant times, Defendant had no training program that was adequate to train its employees on how to properly handle recurring situations pertinent to this action, including, without limitation:

a.   Maintaining appropriate boundaries with students;

b.   Preventing, monitoring for, and reporting Title IX violations and ensuring Title IX compliance;

c.   Recognizing signs of grooming, harassment, or sexual abuse of students within FCHSD;

d.   Recognizing behaviors by teachers and staff that suggest they are at risk of or likely to groom, harass, or sexually abuse students;

e.   Intervening to prevent grooming, harassment, or sexual abuse of students within FCHSD;

f.   Reporting grooming, harassment, and sexual abuse of students within FCHSD to Defendant or its designees; and

g.   Reporting grooming, harassment, and sexual abuse of students within FCHSD to child protection agencies (including DCFS) and law enforcement.

170.     At all relevant times, Defendant completely and utterly failed to supervise its employees, including Berago, for the purpose of preventing the grooming, harassment, and sexual assault of students, with any degree of constitutional adequacy.

28

171. At all relevant times, Defendant completely and utterly failed to discipline its employees, including Berago, for the purpose of preventing grooming, harassment, and sexual assault of students, with any degree of constitutional adequacy.

172. Defendant, directly and by and through its superintendent of FCHSD and the principal of FCHS, knew that it was highly predictable that grooming, harassment, and sexual abuse of students would occur without adequate training, supervision, and discipline. There was a pattern of similar constitutional violations as alleged herein, and Plaintiff's injury was highly predictable even without a pattern of similar constitutional violations.

173. Each of the Defendant's above-described failures to provide adequate training, supervision, and discipline amounted to deliberate indifference to the rights of Plaintiff and FCHSD students.

174. Each of Defendant's above-described failures to provide adequate training, supervision, and discipline directly and proximately caused Plaintiff to suffer grooming, harassment, and sexual assault at the hands of Berago, which violated her constitutionally protected interests in bodily integrity, personal safety, and equal treatment, and her property interests in her K-12 public education.

175. Each of the Defendant's above-described failures to provide adequate training, supervision, and discipline directly and proximately caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 99 above, which entitles her to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant, and enter and order all available and

appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring Defendant to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; litigation costs; reasonable attorney's fees; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT VI – NEGLIGENCE, NEGLIGENCE PER SE, AND PREMISES LIABILITY

176. Plaintiff restates, realleges, and incorporates by reference paragraphs 1 through 115 as if fully restated herein.

177. At all relevant times, Defendant owed a duty of care to Survivor A. This duty of care exceeded ordinary care and included a duty to act *in loco parentis*.

178. At all relevant times, Defendant, directly and by and through its agents, servants, and employees, knew or should have known that Berago's grooming, harassment, and sexual assault of students in FCHSD, including Survivor A, were occurring, were wrong, and were likely to cause injury.

179. Defendant, directly and by and through its agents, servants, and employees, was negligent in at least the following ways:

    a. Failing to report reasonable suspicions of grooming and child abuse to DCFS as required by state law—before, during, and after the grooming and abuse of Survivor A;

    b. Hiring Berago without conducting a criminal background check, or in spite of knowledge of his criminal record;

c.  Failing to fire Berago before he harassed and assaulted Survivor A, and on an ongoing basis thereafter;

d.  Failing to prevent the grooming, harassment, and sexual assault of Plaintiff;

e.  Failing to reasonably direct, instruct, supervise, monitor, and train its agents, servants, or employees to ensure prevention and timely and proper reporting of sexual abuse;

f.  Violating applicable statutes, including those requiring reporting of child sexual abuse to DCFS and law enforcement;

g.  Failing to exercise ordinary care to see that the FCHS property, which it owned and controlled, was reasonably safe for the use of children lawfully on the property, including Survivor A, where Defendant knew and should have known of the unreasonable risk of harm Berago posed to children like Survivor A, and could reasonably expect that Survivor A and other children would not discover or realize the danger Berago posed to them and would fail to protect themselves against such danger;

h.  Failing to adequately conduct reference checks, background checks, or employment screening and ensure minimum qualifications of agents, servants, and employees, including Berago and the employees who supervised him;

i.  Negligently entrusting Berago with teaching and coaching credentials and the premises of FCHS, at the same time it knew, should have known, and was deliberately indifferent to the fact that Berago had committed or was likely to commit sexual abuse; and

j.   Other negligent acts and omissions as may be disclosed during the course of discovery.

180.   Defendant is also vicariously liable for the tortious acts and omissions of Berago herein, because they were made possible by Berago's position and role with the Defendant and were ratified by the Defendant. Defendant failed to report Berago, failed to impose any meaningful discipline on Berago, and continued to promote him in the face of his ongoing misconduct toward and abuse of minors.

181.   As a direct and proximate result of each of the negligent acts and omissions above, Defendant breached its duty and caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 99 above, which entitles her to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant, and enter and order all available and appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring Defendant to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; allowable fees and costs; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT VII – WILLFUL AND WANTON CONDUCT

182.   Plaintiff restates, realleges, and incorporates by reference paragraphs 1 through 115 as if fully restated herein.

32

183. Defendant, directly and by and through its agents, servants, and employees, had notice of substantial danger of harm, in that it knew or was recklessly indifferent to the fact that Berago was grooming and sexually assaulting students at FCHSD.

184. Defendant had a duty to notify law enforcement or DCFS of Berago's actual or suspected grooming, harassment, and sexual assault of Survivor A, Survivor A, and all other individuals whom Berago victimized.

185. Defendant breached said duty where it failed to inform, report, prevent, or discipline Berago's conduct despite notice of a substantial danger of harm to Survivor A.

186. Defendant, directly and by and through its agents, servants, and employees, including the superintendents, principals, and administrators of FCHSD, was willful, wanton, and reckless, in at least the following ways:

    a. Failing to report actual or suspected grooming, harassment, and sexual assault by Berago to appropriate law enforcement or DCFS as required by state law with utter indifference to or in conscious disregard for the safety of others;

    b. Hiring Berago without conducting a criminal background check;

    c. Failing to fire Berago before he harassed and assaulted Survivor A and on an ongoing basis thereafter;

    d. Failing to prevent the grooming, harassment, and sexual assault of Survivor A, with utter indifference to or in conscious disregard for the safety of others;

    e. Failing to reasonably direct, instruct, supervise, monitor, and train its agents, servants, and employees to ensure timely and proper reporting of sexual abuse, with utter indifference to or in conscious disregard for the safety of others;

33

    f.    Failing to reasonably direct, instruct, supervise, monitor, and train its agents, servants, and employees on prevention and detection of child abuse, with utter indifference to or in conscious disregard for the safety of others;

    g.    Failing to see that the FCHS property, which it owned and controlled, was reasonably safe for the use of children lawfully on the property, including Survivor A, where Defendant knew or was recklessly indifferent to the unreasonable risk of harm Berago posed to children like Survivor A, and could reasonably expect that Survivor A and other children would not discover or realize the danger Berago posed to them and would fail to protect themselves against such danger;

    h.    Failing to adequately conduct reference checks, background checks, and employment screening and ensure minimum qualifications of agents, servants, and/or employees with utter indifference to or in conscious disregard for the safety of others.

187.    BOE was recklessly indifferent to and consciously disregarded the safety of Survivor A.

188.    Each of the foregoing willful and wanton acts and omissions directly and proximately caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 99 above, which entitles them to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully request that this Honorable Court enter judgment in their favor, and against Defendant, and enter and order all available and appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring Defendant to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing,

and assaulting students; allowable fees and costs; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT VIII – BREACH OF FIDUCIARY DUTY

189.    Plaintiff restates, realleges, and incorporates by reference paragraphs 1 through 115 as if fully restated herein.

190.    At all times material to this action, Plaintiff was entrusted by her parents to Defendant.

191.    Defendant was required to provide Plaintiff with physical care and protection in the same capacity as a reasonably prudent parent.

192.    Defendant also maintained a fiduciary relationship of trust and confidence with Plaintiff where the Defendant promised to foster, promote, and safeguard Plaintiff's physical and emotional well-being.

193.    Defendant had a special, confidential, and fiduciary relationship with Plaintiff. Plaintiff believed in and respected the authority and direction of and instruction from Defendant, and reasonably believed that Defendant and Berago, its agent, would act in her best interests.

194.    Defendant taught Plaintiff and others to view teachers and coaches, including Berago, with utmost respect and confidence and to obey their instructions and commands.

195.    Defendant confided to Berago the performance of its duty to Plaintiff, as its agent, employee, and representative.

196.    As an agent and representative of Defendant, Berago deepened and affirmed the Defendant's fiduciary relationship with Plaintiff, because he singled Plaintiff out and spent time with

her under the guise of providing Plaintiff with educational, athletic, and personal guidance and instruction, while acting under color of law as a teacher on behalf of Defendant generally.

197.    Plaintiff placed her trust and confidence in Defendant and in Berago as its agent and employee, thereby placing Defendant in a position of influence and superiority over her.

198.    In addition to Defendant's duties in loco parentis, the fiduciary relationship between Plaintiff and Defendant created an affirmative duty on the part of the Defendant to act in Plaintiff's best interest and to protect her, considering her age of minority and vulnerability at all times.

199.    Defendant was obligated to do, but failed to do, the following, among other breaches of its duties toward Plaintiff:

a.    Prevent Berago from being placed in a position where he could abuse Plaintiff and other minor children;

b.    Provide notice and warning to Plaintiff and her parents that Berago was known or suspected to have committed other acts of grooming, improper conduct, and sexual assault;

c.    Intervene to prevent Berago's sexual abuse of Plaintiff once it was discovered;

d.    Reach out to Plaintiff after the abuse ended to disavow Berago's representations to Plaintiff that his misconduct was in any way allowable;

e.    Otherwise exercise its control to prevent and intervene in abuse of Plaintiff and address Plaintiff's abuse by Berago after it occurred;

f.    Disclose its own negligence and wrongdoing to Plaintiff, including its tortious conduct in placing Berago in a position where he could sexually

abuse Plaintiff, and its tortious conduct in failing to act to prevent Berago's sexual abuse of Plaintiff;

g.      Disclose to Plaintiff that she may have one or more causes of action against Defendant, and all facts material to those causes of action;

h.      Timely address the devastating effects of Berago's abuse on Plaintiff by timely offering or securing for Plaintiff's emotional, medical, and financial assistance, and holding Berago meaningfully accountable;

i.       Report Berago's abuse to local and state child protection, law enforcement, and regulatory authorities; and

j.       Other violations as may be disclosed during the course of discovery.

200.    Moreover, Berago, as a fiduciary to Plaintiff, was duty-bound to protect Plaintiff from harm while she was in his care, to speak to her truthfully and without purposeful manipulation, and to establish an appropriate coaching, educational, and mentoring relationship with Plaintiff. Berago breached this duty by, among other acts and omissions, grooming, harassing, and sexually abusing Plaintiff, and failing to disclose the wrongfulness of his conduct to Plaintiff.

201.    Defendant was aware that Berago was using the Defendant's special relationship with students and the wider community to influence children into believing that his grooming and abuse was a necessary and allowable thing, but failed to take action to stop his misconduct and the widespread damage it caused.

202.    Defendant's affirmative misconduct pled above—as well as its continued ratification of and silence about Berago's grooming, harassment, and sexual abuse—breached its duty to Plaintiff.

203. Plaintiff had no reason to suspect that Defendant entered into a scheme of concealment with Berago. Plaintiff believed that the Defendant would not tolerate conduct that was illegal and wrong and that as a teacher and coach, Berago would not commit such wrongful acts.

204. Plaintiff were under no obligation to search for wrongdoing by Defendant where she reasonably believed the Defendant would uphold its duties to act in Plaintiff' best interest and keep her safe.

205. Each of the foregoing breaches of fiduciary duty directly and proximately caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 99 above, which entitles her to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant, and enter and order all available and appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring Defendant to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; allowable fees and costs; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT IX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

206. Plaintiff restates, realleges, and incorporates by reference paragraphs 1 through 115 as if fully restated herein.

207. Defendant intentionally engaged in extreme and outrageous conduct by, at a minimum:

38

a. Falsely representing and implying to students, parents, and the general public that Berago was safe when he was known or should have been known by Defendant to have groomed and sexually abused children or to have a propensity to groom and sexually abuse children;

b. Failing to disclose Berago's misconduct to students, parents, and the public;

c. Failing to report Berago to law enforcement and DCFS;

d. Placing Berago in a community full of children at FCHSD, without properly vetting him for work with children and with knowledge of the risk he would engage in workplace misconduct in general and sexual misconduct with students in particular;

e. Failing to prevent Berago from sexually abusing Plaintiff despite having reasonable cause to believe that Berago would abuse children like Plaintiff;

f. Failing to stop Berago from continuing to abuse Plaintiff despite Defendant's actual or constructive knowledge that the abuse was occurring; and

g. Other acts and omissions as may become apparent during the course of discovery.

208. Defendant knew or should have known that there was a reasonable probability that placing Berago at FCHS would result in the sexual abuse of students like Plaintiff.

209. Furthermore, each of Defendant's tortious acts and omissions described above, as well as each of its de facto policies, widespread practices, and customs described in paragraph 159 above, was so extreme that it went beyond all possible bounds of decency and would be regarded as intolerable in civilized society, and directly and proximately caused injuries to Plaintiff.

39

210.     Defendant's extreme and outrageous conduct directly and proximately caused Plaintiff to suffer severe emotional distress, which entitles her to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant, and enter and order all available and appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring Defendant to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; allowable fees and costs; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT X – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

211.     Plaintiff restates, realleges, and incorporates by reference paragraphs 1 through 115 as if fully restated herein.

212.     The Defendant was negligent by, at a minimum:

a.     Negligently representing and implying to its students, their parents, Plaintiff, her parents, and the general public that Berago was safe to be around children, when he was known or should have been known by the Defendant to have groomed, harassed, and sexually abused children and to have a propensity to groom, harass, and sexually abuse children;

b.     Failing to disclose Berago's misconduct to students, parents, and the public;

c.     Failing to report Berago to law enforcement and DCFS;

d.     Placing Berago in a community full of children at FCHSD, without properly vetting him for work with children and with knowledge of the risk he would

40

engage in misconduct in general and sexual misconduct with minors in particular;

e.    Failing to prevent Berago from sexually abusing Plaintiff despite having reasonable cause to believe that Berago would abuse children like Plaintiff;

f.    Failing to stop Berago from continuing to abuse Plaintiff despite the Defendant's actual or constructive knowledge that the abuse was occurring; and

g.    Other tortious acts and omissions as may become apparent during the course of discovery.

213.    The Defendant either knew or should have known that there was a reasonable probability that placing Berago at FCHS would result in the sexual abuse of children like Plaintiff.

214.    Furthermore, each of the Defendant's de facto policies, widespread practices, and customs described in paragraph 159 above was negligent and directly and proximately caused injury to Plaintiff.

215.    As a result of the Defendant's negligent conduct, Plaintiff suffered severe emotional distress over a period of years and continues to suffer from severe emotional distress today.

216.    Defendant's negligent conduct directly and proximately caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 99 above, which entitles her to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant, and enter and order all available and appropriate relief, including damages in an amount to be determined at trial; injunctive relief

requiring Defendant to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; allowable fees and costs; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## COUNT XI – AIDING AND ABETTING

217.    Plaintiff restates, realleges, and incorporates by reference paragraphs 1 through 115 as if fully restated herein.

218.    Berago repeatedly performed wrongful acts of sexual abuse against Plaintiff, violating her constitutional rights and causing severe emotional injury.

219.    The Defendant aided Berago in harming Plaintiff by:

   a.   Hiring and promoting Berago and thereby giving him the benefit of a respected position that prevented students, parents, and teachers from questioning, confronting or challenging his or Defendant's actions;

   b.   Purposely, knowingly, and recklessly allowing Berago to have continuous and repeated access to children, including Plaintiff, despite the fact that the Defendant knew or should have known he had sexually harassed and abused children and was reasonably likely to sexually harass and abuse children;

   c.   Failing to timely and publicly voice its disdain, displeasure, and condemnation of Berago's actions;

   d.   Purposely refusing to report Berago's harassment and abuse to the police or civil authorities, refusing to impose any meaningful discipline on him, promoting him to more senior positions, and thereby ratifying his actions;

    e.   Transferring Berago on a habitual basis to different roles within the school when it was discovered he had sexually abused a child or children; and

    f.   Other acts and omissions that may become apparent during the course of discovery.

220.    Defendant knew of the criminal, immoral, wrongful, and abhorrent nature of Berago's actions, yet acted in concert with Berago to protect the reputation of FCHS, FCHSD, and Defendant, and to insulate all of the foregoing from legal liability.

221.    Defendant knowingly and substantially aided Berago in his endeavor to sexually abuse children by refusing to timely remove him from his position and consistently placing him in coaching, teaching, and other instructional settings where he had access to children, including Plaintiff, upon whom he preyed.

222.    Defendant knowingly cooperated with Berago's efforts to continue his abusive behavior and purposely concealed Berago's abuse for more than 15 years, ratified his actions, emboldened him to continue to abuse children, and provided him with the ability to continue sexually abusing children in the same manner.

223.    Defendant assisted Berago by refusing to reprimand, punish, remove, and/or report him and knowingly providing Berago with the ideal venue, environment, and atmosphere to commit the same horrific grooming, harassment, and sexual abuse against numerous students.

224.    But for the Defendant's aid and assistance, Berago would not have sexually abused Plaintiff. The Defendant's hiring, retention, and promotion of Berago; its concealment of his abusive behavior; its failure to remove Berago; its failure to report Berago; and its persistent concealment of his tortious acts and crimes effectively shielded Berago from repercussions or moral

reproach, ratified his actions, and greatly assisted him in sexually abusing children under the guise of being a respected teacher.

225.    Defendant's negligent conduct directly and proximately caused Plaintiff to suffer harm and compensable injuries, including but not limited to those described in paragraph 99 above, which entitles her to damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant, and enter and order all available and appropriate relief, including damages in an amount to be determined at trial; injunctive relief requiring Defendant to institute and enforce sound and effective policies and procedures, supervision, and training to prevent teachers, administrators, and staff from grooming, harassing, and assaulting students; allowable fees and costs; prejudgment and postjudgment interest; and such other relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff respectfully demand trial by jury.

Respectfully submitted,

Dated: June 5, 2024

/s/ *Patrick A. Thronson*
Patrick A. Thronson
Trial Bar No. 6319701
Janet, Janet & Suggs, LLC
Executive Centre at Hooks Lane
4 Reservoir Circle, Suite 200
Baltimore, Maryland 21208
Phone: 410-653-3200
Fax:  410-653-9030
E-mail: pthronson@JJSjustice.com